COMMONWEALTH of PA, DEPART-MENT OF PUBLIC WELFARE and CompServices, Inc., Petitioners

v.

WORKERS' COMPENSATION APPEAL BOARD (KOPSIE), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 9, 2011.

Decided Oct. 5, 2011.

Publication Ordered April 10, 2012.

Matthew B. Esslinger, Camp Hill, for petitioners.

Michael W. Cardamone, Pottsville, for respondent Earl Kopsie.

BEFORE: PELLEGRINI, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge PELLEGRINI.

The Department of Public Welfare (Employer) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) denial of Employer's termination petition because Employer failed to meet its burden of demonstrating that Earl Kopsie (Claimant) had fully recovered from a work injury.[1] Because the board erred in determining that Employer did not demonstrate Claimant's full recovery, we reverse.

On March 25, 2005, Claimant was injured while working as a staff nurse at Wernersville State Hospital. Pursuant to a Notice of Compensation Payable (NCP) dated May 25, 2005, describing his work injuries as a cervical/abdomen contusion, Claimant began receiving workers' compensation benefits. On June 18, 2008, Employer filed a notice of ability to return to work based on a report from Richard G. Schmidt, M.D. (Dr. Schmidt), which stated that Claimant was fully recovered from his

---

1. Section 413 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772, provides, in relevant part: "A workers' compensation judge ... may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable ... upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased."

work injury and able to return to unrestricted work. Claimant then filed a review petition alleging that the NCP should be amended to include aggravation of multilevel cervical disc disease, aggravation of canal stenosis, left cervical radiculopathy, and left shoulder adhesive capsulitis.

Before the WCJ, Claimant testified that from September 1991 through March 2005, he was employed by the Commonwealth as a staff nurse at Wernersville State Hospital. He stated that his job involved various physical demands, including subduing disorderly patients if necessary, which occurred approximately three times per week. He stated that on March 25, 2005, a patient attacked him from behind and punched him in the back of his head, neck and left shoulder.

Approximately one week after the attack, Claimant began to experience pain in his neck, left shoulder and elbow. Claimant testified that he rested and took Motrin for a week while he took vacation time. On April 13, 2005, Claimant saw Dr. Wolf, a chiropractor. Claimant then called off from work on April 14 "because the pain got really extreme." (Reproduced Record at 18a.) He remained out of work until May 2005, and then returned to work under restrictions until May 2008. A May 25, 2005 NCP describes Claimant's injury as a cervical/abdomen contusion caused by being struck by a resident.

Claimant testified that approximately a year after the initial injury, his symptoms persisted and eventually spread to his left hip and leg. He also experienced constant, complete numbness in his left index finger. At the hearing, Claimant testified that he did not feel he was capable of performing the full duties of his job and noted that he did not believe he could subdue a combative patient if the need arose.

Before the WCJ, Claimant submitted the deposition testimony of Lewis S. Sharps, M.D. (Dr. Sharps), one of his treating physicians. Dr. Sharps testified that he reviewed medical records of Claimant's various treating health care providers. He also testified that he conducted a physical examination of Claimant in July 2008. Based on his examination, Dr. Sharps opined that Claimant was suffering from traumatic aggravation of multilevel cervical discogenic disease. Dr. Sharps further testified that Claimant suffered from traumatic aggravation of his central canal stenosis, and that left cervical radiculopathy may have been the cause of his left upper extremity pain. Dr. Sharps finally testified that Claimant also suffered aggravation of an earlier open acromioplasty of the left shoulder. Dr. Sharps provided that all of these problems were caused by the March 25, 2005 incident based on where Claimant was struck and where the resultant pain occurred. Based on this, Dr. Sharps stated that it was his opinion that Claimant was unable to return to his job at full duties.

In support of its termination petition, Employer presented the deposition testimony of Dr. Schmidt who examined Claimant on two occasions. During his May 2008 examination of Claimant, Dr. Schmidt conducted a negative drop arm test on Claimant to determine Claimant's range of motion in his left shoulder, and he reported full range of motion. Dr. Schmidt also indicated that Claimant's upper extremity strength was normal and that he did not notice any weakness or atrophy. Additionally, Dr. Schmidt noted that he could not determine a reason for Claimant's index finger numbness.

Following a review of an April 19, 2005 CAT scan of Claimant, Dr. Schmidt testified that the scan showed degenerative changes of the cervical spine with some

stenosis. Dr. Schmidt also reviewed a July 2006 EMG nerve conduction study and testified that the study indicated no radiculopathy, plexopathy or peripheral neuropathy. Based on his physical examination of Claimant, as well as his review of Claimant's medical records, Dr. Schmidt testified that he was of the opinion that Claimant suffered a contusional injury to the mid-trapezial region as a result of the March 25, 2005 incident, and that Claimant had made a full recovery and could return to work at full duty.

Dr. Schmidt also examined Claimant again on December 15, 2008. Dr. Schmidt noted that Claimant's strength and range of motion were normal and that there was still no explanation for the left index finger numbness. Dr. Schmidt attributed Claimant's complaints about his hip and knee pain to Claimant's morbid obesity. Dr. Schmidt concluded that Claimant did not incur an aggravation of a multilevel cervical condition, contrary to Dr. Sharps' opinion, and that even if Claimant had suffered such an injury, he had fully recovered.

As to the work injury accepted by the NCP, Dr. Schmidt was asked the following hypothetical question:

> Q. The notice of compensation payable issued in this case reflects the compensable injury consists of a cervical strain and abdominal strain. Assuming this to be true, Doctor, do you have an opinion within a reasonable degree of medical certainty as to whether or not Mr. Kopsie had realized a full recovery of the cervical strain and or abdominal strain and or contusion that you just identified as of the date that you conducted your evaluation on May 30, 2008?

> A. Yes. My opinion was full recovery. (May 29, 2009 Deposition Transcript of Dr. Schmidt at 9–11, 21.)

Finding the testimony of Claimant and Dr. Sharps not credible, the WCJ denied Claimant's review petition. He noted that Dr. Sharps was "one of a long line of treating providers for Claimant" and did not examine Claimant until over three years after the incident giving rise to the injury occurred. The WCJ also noted that Dr. Sharps failed to take Claimant's obesity into account when discussing Claimant's current symptoms. The WCJ determined Claimant failed to demonstrate that his disability increased and that the original injury was the cause of the proposed amending injury.[2]

While finding Dr. Schmidt's testimony credible because he found Dr. Schmidt discussed Claimant's medical history at length and considered Claimant's obesity in regard to Claimant's current medical condition, nonetheless, he did not grant Employer's termination petition. He reasoned that because Dr. Schmidt's testimony only provided that Claimant had recovered from a contusional injury to his trapezial region, which was not the injury recognized in the NCP, Employer failed to meet its burden of establishing that Claimant fully recovered from his work-related injury. Only Employer appealed to the Board.

 The Board affirmed the WCJ's decision agreeing that Dr. Schmidt disregarded the accepted diagnosis of an abdominal and cervical contusion. The Board further noted that Dr. Schmidt's only consideration of the injury recognized in the NCP was based on a hypothetical

---

2. Where a claimant seeks to amend an NCP pursuant to § 413(a) of the Workers' Compensation Act (Act), 77 P.S. § 772, he has the burden to demonstrate that his disability has increased and that his original work-related injury caused the amending disability. *Jeanes Hospital v. Workers' Compensation Appeal Board (Hass)*, 582 Pa. 405, 872 A.2d 159 (2005).

question, which it found to be insufficient to meet the burden of demonstrating full recovery. It found that Dr. Schmidt's testimony was re-litigation of the accepted injury, which is prohibited without Employer first filing a review petition to change the accepted injury. It rejected Employer's argument that Dr. Schmidt addressed the accepted injury when he answered in the affirmative the hypothetical question that even if Claimant had the injury described in the NCP, he fully recovered. The Board determined that the WCJ correctly held that Employer did not fulfill its burden.[3] Commissioner McDermott dissented, reasoning that Dr. Schmidt's answer to the hypothetical question that Claimant had fully recovered was substantial evidence sufficient to support the WCJ's finding that Claimant had made a full recovery and that he did not need to examine the abdominal area because Claimant made no mention when asked of any continuing pain or incapacity coming from that area, only complaints regarding his cervical contusion. This appeal followed.[4]

■ Employer contends that although Dr. Schmidt reached a different diagnosis from the accepted diagnosis set forth in the NCP, he did address that Claimant was fully recovered from a cervical strain and/or abdominal strain and/or contusion in the hypothetical question posed to him opining that Claimant fully recovered from his work injury. While acknowledging that Dr. Schmidt did not examine Claimant's abdominal area, Employer contends that he did not need to do so because Claimant's only complaints at the time of his examination was to his right thumb injury. Citing to *Stancell v. Workers' Compensation Appeal Board (LKI Group, LLC)*, 992 A.2d 221 (Pa.Cmwlth.2010), Employer contends that no examination of the area on Claimant's body where the work injury occurred was necessary. The question in this case then is whether Dr. Schmidt had a sufficient basis to opine that Claimant had fully recovered from his work related injury.

In *Stancell*, the issue was whether there was sufficient evidence to support a WCJ's grant of a termination petition when the employer's medical witness did not examine the claimant's right lower arm, the location of the contusion accepted as the

---

3. An employer in a termination proceeding bears the burden of proving "by substantial evidence either that the employee's disability has ceased, or that any current disability arises from a cause unrelated to the employee's work injury." *Davis v. Workers' Compensation Appeal Board (Mercy Douglas and PMA Group)*, 749 A.2d 1033, 1035 (Pa.Cmwlth. 2000) (quoting *Parker v. Workers' Compensation Appeal Board (Dock Terrace Nursing Home)*, 729 A.2d 102, 104–105 (Pa.Cmwlth. 1999)). A medical expert's opinion must be unequivocal, made with a reasonable degree of certainty, and the testimony must be reviewed in its entirety. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 550 Pa. 319, 327 n. 3, 705 A.2d 1290, 1293 n. 3 (1997).

An employer may not re-litigate, by way of a petition to terminate benefits, the original

medical diagnosis underlying a WCJ's finding of a claimant's disability as of the date of the compensation award. To do so would violate the doctrine of collateral estoppel, which 'forecloses re-litigation in a later action, of an issue of fact or law which was originally litigated and which was necessary to the original judgment.'
*Inservco Insurance Services v. Workers' Compensation Appeal Board (Purefoey)*, 902 A.2d 574, 578 (Pa.Cmwlth.2006) (citations omitted).

4. Our review of a decision of the Board is limited to determining whether errors of law were made, constitutional rights were violated or whether the record supports the necessary findings of fact. *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)*, 966 A.2d 1159 (Pa.Cmwlth.2009).

work injury. Only when the medical witness was asked a hypothetical question did he opine that if her recognized work injury also included a right lower arm contusion, she had fully recovered. That claimant argued that the medical opinion was not competent because the medical witness did not examine the claimant's right lower arm and he had insufficient information upon which to base his conclusion as to the status of her work-related right lower arm injury. However, the claimant and the claimant's treating chiropractor made no mention of the claimant's lower arm pain, and when the employer's witness asked the claimant about that pain, she made no mention of suffering from any lower arm pain when she testified before the WCJ. Consequently, we held in that situation, largely based upon the claimant's failure to mention any pain when asked, that the employer's medical expert's testimony, even based on the hypothetical situation, was sufficient evidence to support the grant of a termination petition. *See also Jackson v. Workers' Compensation Appeal Board (Resources for Human Development)*, 877 A.2d 498 (Pa.Cmwlth.2005).

In this case, just as in *Stancell*, neither Claimant nor his medical witness mentioned that he had continuing problems in the abdomen, just matters relating to his cervical sprain which he stated caused him pain in his left hip and leg and numbness in his left index finger. When conducting a medical examination to determine whether Claimant had fully recovered from a "cervical abdomen contusion" and the cervical aspect was the only source of continuing pain of that imprecise definition of the injury, there was no need for the medical expert to examine an area where it could not be the source of any of the complained-of symptoms. In any event, while Dr. Schmidt did not examine that abdomen per se, he did review all of Claimant's medical history, his nerve conduction studies and

tests that gave him a sufficient basis to opine that Claimant had fully recovered from his work-related injury.

For all of the above reasons, the order of the Board is reversed.

### ORDER

AND NOW, this 5th day of October, 2011, the order of the Workers' Compensation Appeal Board at No. A09–2255, is reversed.