MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 86
Docket:      Yor-15-564
Argued:      June 10, 2016
Decided:     May 9, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.
Majority:    SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and HUMPHREY, JJ.
Dissent:     JABAR, J.


NORMAN GAUDETTE

v.

TERRY M. DAVIS


GORMAN, J.

[¶1]  Terry M. Davis appeals from an order of the Superior Court (York County, *O'Neil, J.*) denying his special motion to dismiss, pursuant to 14 M.R.S. § 556 (2016), a complaint filed against him by Norman Gaudette.  Davis contends that the court erred by allowing the lawsuit to move forward because 14 M.R.S. § 556, Maine's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute, requires that the complaint be dismissed. Because we clarify the process for the handling of these special motions, we vacate the judgment and remand the matter to the trial court.

## I. BACKGROUND

[¶2]   On June 1, 2015, Gaudette instituted a lawsuit against Davis alleging that, from 1990 to 1991, when both worked for the Biddeford Police Department, Gaudette was investigated for alleged sexual abuse, and that when those allegations recently resurfaced, Davis made various statements inculpating Gaudette and suggesting a cover-up by an Assistant Attorney General.   By amended complaint, Gaudette asserted six counts against Davis: (I) defamation as to statements Davis made to a reporter that were published in a local newspaper; (II) defamation as to a letter written by Davis and read aloud at a public forum and submitted to State officials; (III) intentional infliction of emotional distress; (IV) negligent infliction of emotional distress; (V) violation of the Criminal History Record Information Act, 16 M.R.S. §§ 701-710 (2014),[1] and the Intelligence and Investigative Record Information Act, 16 M.R.S. §§ 801-809 (2014);[2] and (VI) seeking punitive damages.

[¶3]   Davis answered the complaint and, soon after, filed a special motion to dismiss the lawsuit—with an accompanying affidavit and exhibits—

---

[1] Title 16 M.R.S. § 707 has since been amended, but that amendment does not affect this appeal. P.L. 2015, ch. 354, § 2 (effective Oct. 15, 2015) (codified at 16 M.R.S. § 707 (2016)).

[2] Title 16 M.R.S. § 806 has since been amended, but that amendment does not affect this appeal. P.L. 2015, ch. 411, §§ 1-2 (effective July 29, 2016) (codified at 16 M.R.S. § 806 (2016)).

on grounds that the complaint was barred by the anti-SLAPP statute, 14 M.R.S. § 556. Gaudette submitted his own affidavits and exhibits in opposition to the special motion to dismiss. After a nontestimonial hearing, by judgment dated October 26, 2015, the court denied Davis's special motion to dismiss. Davis timely appeals.[3]

## II. DISCUSSION

[¶4] A so-called "Strategic Lawsuit Against Public Participation" (SLAPP) refers to litigation instituted not to redress legitimate wrongs, but instead to "dissuade or punish" the defendant's First Amendment exercise of rights through the delay, distraction, and financial burden of defending the suit. *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842 (quotation marks omitted). Maine's anti-SLAPP statute, 14 M.R.S. § 556, purports to provide a means for the swift dismissal of such lawsuits early in the litigation as a safeguard on the defendant's First Amendment right to petition:

> When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. The special motion may be advanced on the

---

[3] We have recognized the right to immediately appeal from the denial of a special motion to dismiss on anti-SLAPP grounds, notwithstanding the lack of a final judgment on the underlying complaint. *Schelling v. Lindell*, 2008 ME 59, ¶ 8, 942 A.2d 1226.

docket and receive priority over other cases when the court determines that the interests of justice so require. The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

The Attorney General on the Attorney General's behalf or on behalf of any government agency or subdivision to which the moving party's acts were directed may intervene to defend or otherwise support the moving party on the special motion.

All discovery proceedings are stayed upon the filing of the special motion under this section, except that the court, on motion and after a hearing and for good cause shown, may order that specified discovery be conducted. The stay of discovery remains in effect until notice of entry of the order ruling on the special motion.

The special motion to dismiss may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms the court determines proper.

If the court grants a special motion to dismiss, the court may award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters. This section does not affect or preclude the right of the moving party to any remedy otherwise authorized by law.

As used in this section, "a party's exercise of its right of petition" means any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a

legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

14 M.R.S. § 556; *see Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 6, 847 A.2d 1169.

[¶5]  Despite an extensive statement regarding the purpose and effect of the anti-SLAPP law, section 556 has left some gaps in direction regarding its application that we and the trial courts have attempted to address on a case-by-case basis as issues arise.  Of particular relevance to this appeal is the question of how, in the course of the mandated expedited consideration of the special motion to dismiss, a court should resolve any factual disputes.

[¶6]  The First Amendment guarantees the "freedom of speech" and "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I; *see* U.S. Const. amend. XIV; Me. Const. art. I, § 4; *Cent. Me. Power Co. v. Pub. Utils. Comm'n*, 1999 ME 119, ¶ 8, 734 A.2d 1120 (stating that "[t]he First Amendment to the United States Constitution [is] applicable to the states through the Due Process Clause of the Fourteen Amendment").  Within the right to petition is also found the right to access courts to seek redress for

6

claimed injuries. U.S. Const. amend. I; Me. Const. art. I, § 19; *McDonald v. Smith*, 472 U.S. 479, 482-83 (1985); *Nader v. Me. Democratic Party* (*Nader I*), 2012 ME 57, ¶¶ 20-25, 41 A.3d 551. Any application of the anti-SLAPP statute to actual petitioning activity creates tension between at least these two coexistent constitutional rights. Therefore, when considering a motion to dismiss pursuant to section 556, a court must attempt to recognize and protect both the defendant's actions that might constitute an exercise of his First Amendment right to petition—here, Davis's statements about Gaudette's alleged involvement in illegal and immoral acts—and the plaintiff's, Gaudette's, right of access to the courts to seek redress for those same actions.[4] *See Nader I*, 2012 ME 57, ¶¶ 20-25, 41 A.3d 551; *Morse Bros.*, 2001 ME 70, ¶ 15 n.2, 772 A.2d 842.

[¶7] In the twenty-two years since its first enactment, *see* P.L. 1995, ch. 413, § 1 (effective Sept. 29, 1995), we have had occasion to consider the anti-SLAPP statute on fewer than ten occasions—in *Morse Brothers*, 2001 ME 70, 772 A.2d 842; *Maietta Construction*, 2004 ME 53, 847 A.2d 1169; *Schelling v. Lindell*, 2008 ME 59, 942 A.2d 1226; *Nader I*, 2012 ME 57, 41 A.3d 551;

---

[4] Depending on the activity at issue, other constitutional rights may also be implicated, such as the right of access to the ballot. *See Nader v. Me. Democratic Party* (*Nader I*), 2012 ME 57, ¶¶ 26-27 & n.11, 41 A.3d 551.

*Nader v. Maine Democratic Party* (*Nader II*), 2013 ME 51, 66 A.3d 571;

*Bradbury v. City of Eastport*, 2013 ME 72, 72 A.3d 512; *Town of Madawaska v.*

*Cayer*, 2014 ME 121, 103 A.3d 547; and *Camden National Bank v. Weintraub*,

2016 ME 101, 143 A.3d 788.  Although the basic procedure dictated by section

556 has remained constant throughout these prior decisions, we have made

changing pronouncements on certain aspects of anti-SLAPP practice on which

the statute is silent.

[¶8]  We have consistently specified a shifting assignment of burdens.

*Weintraub*, 2016 ME 101, ¶ 8, 143 A.3d 788; *Morse Bros.*, 2001 ME 70,

¶¶ 19-20, 772 A.2d 842.   It is first the moving party's (generally, the

defendant's) burden to establish, as a matter of law, that "the claims against

[him] are based on [his] exercise of the right to petition pursuant to the

federal or state constitutions."[5]  *Morse Bros.*, 2001 ME 70, ¶ 19, 772 A.2d 842;

---

[5] As we have noted, the anti-SLAPP statute was primarily intended to address citizen objections in land matters: "The typical mischief that the anti-SLAPP legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects." *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842 (alteration omitted) (quotation marks omitted); *see Town of Madawaska v. Cayer*, 2014 ME 121, ¶ 13, 103 A.3d 547 (noting that the "classic anti-SLAPP case[]" is one in which "citizens who publicly oppose development projects are sued by companies or other citizens"); *Maietta Constr.*, *Inc. v. Wainwright*, 2004 ME 53, ¶ 7, 847 A.2d 1169.

Because of the broad language chosen by the Legislature to define petitioning activity, however, we have been presented with a series of anti-SLAPP matters in which the plaintiff is suing the defendant for some form of defamation, and in which the plaintiff primarily claims to have suffered emotional distress, loss of sleep, embarrassment and humiliation, and the like. *E.g.*, *Camden Nat'l Bank v. Weintraub*, 2016 ME 101, ¶ 3, 143 A.3d 788; *Nader I*, 2012 ME 57, ¶¶ 5-9,

*see Nader II*, 2013 ME 51, ¶ 12 n.9, 66 A.3d 571. If the moving party does not meet that burden, the anti-SLAPP statute does not apply and the special motion to dismiss must be denied without any further inquiry into the nonmoving party's anti-SLAPP filings. *Nader I*, 2012 ME 57, ¶ 15, 41 A.3d 551.

[¶9] If the moving party establishes that the activity that is the subject of the litigation constitutes petitioning activity, and thereby that the anti-SLAPP statute applies, the burden then shifts to the nonmoving party (generally, the plaintiff in the underlying suit) to establish that although petitioning activity is at issue, that petitioning activity (1) "was devoid of any reasonable factual support or any arguable basis in law" and (2) "caused actual injury to the [nonmoving] party." 14 M.R.S. § 556; *see Morse Bros.*, 2001 ME 70, ¶ 20, 772 A.2d 842.

[¶10] Applying the process we created in earlier opinions, to meet their respective burdens in the trial court, both parties relied solely on the pleadings and affidavits submitted in advancing or opposing the special motion to dismiss. *See* 14 M.R.S. § 556; *Morse Bros.*, 2001 ME 70, ¶ 17, 772 A.2d 842.

---

41 A.3d 551; *Schelling*, 2008 ME 59, ¶ 5, 942 A.2d 1226; *Maietta Constr.*, 2004 ME 53, ¶¶ 4, 9-10, 847 A.2d 1169.

[¶11]  The portion of the analysis that we have modified is the standard by which those pleadings and affidavits are reviewed by the trial court, and by us.  In *Morse Brothers*, we held that "[b]ecause the special motion [to dismiss] requires the consideration of both pleadings and affidavits, the standard of review should resemble the standard for reviewing a motion for summary judgment."  2001 ME 70, ¶ 17, 772 A.2d 842.  According to that standard, the trial court was tasked with "view[ing] the evidence in the light most favorable to the moving party because the [nonmoving] party bears the burden of proof when the statute applies"—that is, in the face of conflicting facts, the court must grant the special motion to dismiss the action.  *Id.* ¶ 18.  Three years later, we applied the same standard in *Maietta Construction*, 2004 ME 53, ¶ 8, 847 A.2d 1169.

[¶12]  In *Nader I*, we changed course and articulated a review standard by which the nonmoving party was required to demonstrate only "prima facie evidence to support its burden of showing that the moving party's petitioning activity was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the [nonmoving] party."  2012 ME 57, ¶ 33, 41 A.3d 551 (quotation marks omitted).  A prima facie standard is a low one, and requires only "some evidence" on the required

elements of proof and does not depend on the reliability or credibility of that evidence. *Id.* ¶¶ 34-35 (quotation marks omitted); *cf. Nader II*, 2013 ME 51, ¶ 19, 66 A.3d 571 (cautioning that "averments made on information and belief" do not satisfy a prima facie burden, and the attesting party must instead provide some admissible evidence (quotation marks omitted)). Further, the plaintiff needed only to meet this burden as to any *one* of the petitioning activities at issue, and was not obligated to establish prima facie evidence that all of the defendant's petitioning activities were devoid of a factual or reasonable basis and caused actual injury.[6] *Nader I*, 2012 ME 57, ¶ 36, 41 A.3d 551; *see Nader II*, 2013 ME 51, ¶ 14, 66 A.3d 571 (applying the standard as enunciated in *Nader I*); *see also Weintraub*, 2016 ME 101, ¶¶ 10-11, 143 A.3d 788 (same); *Cayer*, 2014 ME 121, ¶ 9, 103 A.3d 547 (same).

[¶13]   The shift from the *Morse Brothers* standard to the *Nader I* standard represented an adjustment in the balancing of the protections afforded within anti-SLAPP procedure.  Pursuant to the practice established by *Morse Brothers*, 2001 ME 70, ¶ 18, 772 A.2d 842, when conflicting facts

---

[6] In *Morse Brothers*, we stated that on appeal, we review the denial of a special motion to dismiss on anti-SLAPP grounds for an abuse of discretion or error of law.  2001 ME 70, ¶ 18, 772 A.2d 842. Twelve years later, we held instead that our review is de novo, founded as it is on the statutory interpretation of section 556, and that the abuse of discretion standard did not apply. *Nader v. Me. Democratic Party* (*Nader II*), 2013 ME 51, ¶ 12 n.9, 66 A.3d 571.

were alleged, the court was required to grant the special motion to dismiss the action.  As a result, the *Morse Brothers* process provided greater protection to the right to petition than to the right to access the courts.  According to the standard we adopted in *Nader I*, 2012 ME 57, ¶¶ 30, 35, 41 A.3d 551, however, when conflicting facts were alleged, the court was required to deny the special motion to dismiss and allow the matter to proceed to trial.  Thus, the *Nader I* standard afforded greater protection to the right to access the courts than to the right to petition.

[¶14]  We now conclude that neither system, by itself, provides sufficient protection for the due process rights of both the plaintiff and the defendant: the *Morse Brothers* standard provides virtually no protection for the right to seek redress for harms through suit, and the *Nader I* standard results in a pronounced dilution of the Legislature's apparent objective in enacting the anti-SLAPP statute—the prompt dismissal of lawsuits that threaten a defendant's right to petition.

[¶15]  We therefore return, as we must in any statutory interpretation matter, to the plain language of section 556, *see Weintraub*, 2016 ME 101, ¶ 9, 143 A.3d 788, and in particular, to its mandate that "*[t]he court shall grant the special motion [to dismiss]*, *unless* the party against whom the special motion is

made *shows*" the necessary criteria, i.e., "that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the [nonmoving] party," 14 M.R.S. § 556 (emphases added). As written, section 556 places the burden on the nonmoving party to "show[]" that the petitioning activity was baseless. It also sets out as the default that the matter "shall" be dismissed if the moving party has established that it is petitioning activity at issue. 14 M.R.S. § 556. By this plain language, the Legislature has demonstrated its intention to grant strong protection to petitioning activity, and indeed, perhaps stronger protection to petitioning activity than the competing right to seek relief from the court. We cannot, however, provide *no* protection for the right to seek redress in court.

[¶16] We therefore clarify that the following procedure is to apply in matters in which the anti-SLAPP statute is raised. First, as always, the defendant must file a special motion to dismiss and establish, based on the pleadings and affidavits, that "the claims against [him] are based on [his] exercise of the right to petition pursuant to the federal or state constitutions." *Morse Bros.*, 2001 ME 70, ¶ 19, 772 A.2d 842. That it is petitioning activity at issue, and that the anti-SLAPP statute therefore applies, is purely a question of

law for the court's decision.  *Nader II*, 2013 ME 51, ¶ 12 n.9, 66 A.3d 571.  If the moving party filing the special motion to dismiss does not establish that the claims are based on his or her petitioning activity as a matter of law, the court must deny the special motion to dismiss without any need to review any opposition by the plaintiff.  *Nader I*, 2012 ME 57, ¶ 15, 41 A.3d 551.

[¶17]  If the court agrees that the defendant has met this burden as a matter of law, the court must then consider the plaintiff's opposition to the special motion to dismiss.  *Id.* ¶ 16.  As set out in *Nader I*, and in accordance with section 556, it is the plaintiff's burden to establish, through the pleadings and affidavits, prima facie evidence that the defendant's petitioning activity was "devoid of any reasonable factual support or any arguable basis in law" *and* that the defendant's petitioning activity "caused actual injury" to the plaintiff.  *Id*. ¶¶ 16, 29-38 (quotation marks omitted).  If the plaintiff fails to meet any portion of this prima facie burden—either by the absence of the minimum amount of evidence on either element or based on some other legal insufficiency, *see, e.g.*, *Nader II*, 2013 ME 51, ¶¶ 19-25, 66 A.3d 571; *Schelling*, 2008 ME 59, ¶¶ 17-27, 942 A.2d 1226—the special motion to dismiss must be granted, either partially or wholly, with no additional procedure.  14 M.R.S. § 556; *see Nader I*, 2012 ME 57, ¶ 37, 41 A.3d 55.

14

[¶18]  We now hold, however, contrary to what we indicated in *Nader I*, 2012 ME 57, ¶ 30, 41 A.3d 55, that if the plaintiff meets this prima facie burden for any or all of the defendant's petitioning activities, the special motion to dismiss is not then automatically denied.  Rather, we establish an additional procedural component whereby, on motion by either party, (1) the court permits the parties to undertake a brief period of limited discovery, the terms of which are determined by the court after a case management hearing, and (2) at the conclusion of that limited discovery period, the court conducts an evidentiary hearing.[7]  At the evidentiary hearing, it is the plaintiff's burden to establish, by a preponderance of the evidence, each of the elements for opposing the dismissal on anti-SLAPP grounds for which he successfully made out his prima facie case—that the defendant's petitioning activity was devoid of factual support or an arguable legal basis and that the petitioning activity caused the plaintiff actual injury.[8]  *See* 14 M.R.S. § 556; *Nader I*, 2012 ME 57, ¶ 33, 41 A.3d 551.  If neither party requests discovery and/or the evidentiary

[7]  This procedure comports with and satisfies the discovery provisions in the third and fifth paragraphs of 14 M.R.S. § 556 (2016), including the requirement of "good cause."

[8]  On appeal, we will therefore review any findings of fact as we do for any factual determination—for clear error or, if the plaintiff was unsuccessful in meeting his burden by a preponderance of the evidence, to determine whether the trial court was compelled to find in the plaintiff's favor.  *See St. Louis v. Wilkinson Law Offices, P.C.*, 2012 ME 116, ¶ 17, 55 A.3d 443.  We also continue to embrace the standard of review on appeal as clarified in *Nader II*, and we therefore review the trial court's ultimate decision on a special motion to dismiss on anti-SLAPP grounds de novo as a matter of law.  2013 ME 51, ¶ 12 & n.9, 66 A.3d 571.

hearing, however, the court shall decide whether the plaintiff has met this burden by a preponderance of the evidence based only on the parties' submissions in seeking and opposing the special motion to dismiss.

[¶19]   To protect the defendant from the type of generalized and burdensome discovery that the anti-SLAPP statute was meant to obviate, the trial court must strictly limit the scope of both discovery and the hearing itself in two ways.  First, the issues the parties may be allowed to conduct discovery on or litigate are strictly limited to the elements of the plaintiff's burden in opposing the anti-SLAPP motion—whether the defendant's petitioning activity was "devoid of any reasonable factual support or any arguable basis in law" and whether the activity "caused actual injury" to the plaintiff.  14 M.R.S. § 556; *see Nader I*, 2012 ME 57, ¶ 33, 41 A.3d 551.  We emphasize that these elements are distinguishable from the elements of the plaintiff's burden on his underlying causes of action; discovery and evidence that pertain to the causes of action themselves are not relevant at this stage of the proceeding, and only become relevant if the plaintiff survives the evidentiary hearing on the anti-SLAPP motion.

[¶20]   Second, neither discovery nor the hearing may address any petitioning activity for which the plaintiff's prima facie burden was not met.

As we held in *Nader I*, to survive the special motion to dismiss, the plaintiff must meet his prima facie burden as to *any one* of the petitioning activities at issue, and is not required to establish that *all* of the defendant's petitioning activities were devoid of a factual or legal basis and caused actual injury. 2012 ME 57, ¶ 36, 41 A.3d 551. However, the plaintiff shall not be permitted to investigate or litigate facts surrounding those petitioning activities for which he was unable to establish prima facie evidence because those activities may form no further basis for the plaintiff's opposition to the anti-SLAPP motion or the remaining litigation on the plaintiff's underlying complaint.

[¶21] We reiterate that this evidentiary hearing is not, in any way, intended to be a decision on the merits of those causes of action for which the plaintiff has met his prima facie burden, and that the only decision to be reached by the trial court is whether the plaintiff establishes, by a preponderance of the evidence, the two elements required by section 556. If the court finds that the plaintiff has not met that burden by a preponderance of the evidence for any of the plaintiff's actions, the court must grant the special motion to dismiss as to those actions. *See* 14 M.R.S. § 556. On the other hand, the plaintiff will be permitted to proceed with the merits of his

complaint as to those acts for which the court finds the plaintiff has met his burden by a preponderance of the evidence.

[¶22]  Although section 556 does not require this additional procedure, neither does it prohibit it.   This procedure best preserves all of the constitutional rights at issue and affords both parties additional due process, while also serving the legislative intent we glean from the plain language of section 556—to provide additional protection to the right to petition.   It maintains the burden of proof with the plaintiff according to the elements set out in section 556.  It forces the plaintiff to meet his burden for each of the defendant's discrete petitioning acts.   It winnows the acts for which the plaintiff may maintain the lawsuit to those that the plaintiff can "show[]," pursuant to section 556, were both devoid of a legal or factual basis and caused the plaintiff actual injury.  It is similar to the procedure for other dispositive motions, with which we were concerned in *Nader I*, 2012 ME 57, ¶ 33, 41 A.3d 551.   It allows the trial court to grant an early and swift dismissal as a matter of law in those instances in which the plaintiff cannot meet this burden on even a prima facie basis without ever having to undergo anti-SLAPP discovery or an evidentiary hearing.  It thereby preserves for the court's decision, as a matter of proof by a preponderance of the evidence, any

legitimate factual dispute about anti-SLAPP protection, a decision best undertaken in the first instance by the trial court. In short, the considerations we expressed in both *Morse Brothers* and *Nader I* remain viable, and, rather than making another abrupt change, we address these considerations by extending the procedure we adopted in *Nader I*.[9]

[¶23] We turn now to the case before us. With his special motion to dismiss, Davis argued and attested that his actions that formed the basis of Gaudette's complaint—Davis's statements regarding the sexual abuse investigation—constituted petitioning activity in that they were intended to "inform an ongoing public discussion and investigation into allegations of sexual abuse of minors by members of the Biddeford Police Department

---

[9] Our shifting interpretations of the anti-SLAPP statute reflect our continuing struggle with the sweeping breadth of the statute, particularly when compared to the anti-SLAPP statutes of other states. *See, e.g.*, *Cayer*, 2014 ME 121, ¶ 14, 103 A.3d 547 ("Unlike statutes in some other states, Maine's anti-SLAPP statute does not expressly exempt government enforcement actions from its application. Further, there is limited legislative history to shed light on the question of its scope." (footnote omitted)); *Schelling*, 2008 ME 59, ¶ 12, 942 A.2d 1226 ("As is clear from the language of section 556, the Legislature intended to define in very broad terms those statements that are covered by the statute."). Indeed, according to the language chosen by the Legislature, section 556 provides protection not only for direct communication, petitions, or requests by citizens to their government, but also for

> any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

14 M.R.S. § 556. The statute's silence as to the particular means by which anti-SLAPP motions are meant to be decided has created further difficulty.

between the 1980s and the early 2000s, as well as the handling of such allegations by the Maine Attorney General's Office." The court determined that "Davis's statements clearly fit within the broad definition of petitioning activity" and that the anti-SLAPP statute therefore applied as a matter of law. We do not disturb this legal conclusion. *See Nader II*, 2013 ME 51, ¶ 12 & n.9, 66 A.3d 571.

[¶24] The burden then shifted to Gaudette. *See Weintraub*, 2016 ME 101, ¶ 8, 143 A.3d 788; *Morse Bros.*, 2001 ME 70, ¶ 20, 772 A.2d 842. The court first determined that an affidavit submitted by Gaudette, in which the Assistant Attorney General who had prosecuted Gaudette attested that certain of Davis's statements were "totally false," provided sufficient evidence to meet Gaudette's burden of producing prima facie evidence that Davis's statements were devoid of factual or legal support. As to actual injury, the court concluded that Gaudette had established—and Davis has not challenged—that Gaudette provided sufficient prima facie evidence that Davis's statements caused Gaudette actual injury in the form of lost income and physical and mental injury.

[¶25] This analysis of Gaudette's opposition started and ended (at the time, properly) with the prima facie standard that we set out in *Nader I*. We

must therefore remand the matter to the Superior Court for it to reconsider Gaudette's opposition according to the procedure and standards we now set forth, including by allowing Gaudette to submit any additional materials necessary to comply with this new procedure.[10]  Given this decision, we also deny Gaudette's motion seeking treble costs and expenses, including attorney fees, pursuant to M.R. App. P. 13(f).

The entry is:

> Judgment vacated.  Remanded for further proceedings consistent with this opinion.

---

JABAR, J., dissenting.

[¶26]  I respectfully dissent because the new procedures that the Court establishes defeat the purpose of the legislation, create unconstitutional impediments to potentially meritorious causes of action, and place an undue burden upon litigants in derogation of established common law by screening what would otherwise be meritorious cases.

---

[10]  We also take this opportunity to call to the attention of the court and the parties that a statement is defamatory only if it is "of or concerning" a plaintiff (among other elements).  *Hudson v. Guy Gannett Broad. Co.*, 521 A.2d 714, 716 (Me. 1987) (quotation marks omitted); *see Robinson v. Guy Gannett Publ'g Co.*, 297 F. Supp. 722, 725-26 (D. Me. 1969).  Thus, any statements made by Davis criticizing either the Assistant Attorney General or the grand jury process could not constitute defamation of Gaudette by Davis.

[¶27]  Almost five years ago, we held that when a party makes a special motion to dismiss pursuant to 14 M.R.S. § 556 (2016), the nonmoving party must make a prima facie showing that any of the petitioning activities by the moving parties were devoid of reasonable factual support or arguable basis in law, and that the nonmoving party suffered an actual injury.  *Nader v. Me. Democratic Party* (*Nader I*), 2012 ME 57, ¶ 38, 41 A.3d 551.  The Court now abandons our case law, creating an additional mandatory evidentiary hearing that places the burden of proof upon the plaintiff to establish, by a preponderance of the evidence, that the defendant's petitioning acts were devoid of any factual support or arguable basis in law and caused actual injury.  Court's Opinion ¶ 17.  This required showing necessarily implicates the merits of the case.

A.    Legislative Intent

[¶28]  I agree with the Court insofar as it recognizes that *application* of the anti-SLAPP statute creates tension between the coexisting constitutional rights to petition and to access the courts.  Court's Opinion ¶ 6.  However, I disagree with the Court's assumption that the Legislature's intent to balance these rights is apparent from the face of the statute.  Rather than attempting to grant "stronger protection to petitioning activity than the competing right

to seek relief from the court," as the Court suggests, Court's Opinion ¶¶ 15-16, the Legislature's intent is *only* to protect petitioning activity against meritless cases. Contrary to the Court's conclusion, the face of the statute does not require us to balance the right to petition with the right of access to the courts.

[¶29] The plain language of the statute states that a "court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition" meets the two statutory criteria: that the moving party's exercise of the right to petition "was devoid of any reasonable factual support or any arguable basis in law[,] and that the moving party's acts caused actual injury." 14 M.R.S. § 556. Before the court reaches its decision, "upon the filing of the special motion," "discovery proceedings are stayed," essentially placing the litigation on pause while the court determines whether the case may move forward. *Id.* The intent of the Legislature was to avoid unnecessary litigation due to meritless cases brought for reasons other than the interests of justice or restoration for injury.

[¶30] The statute does not weigh the right of petition against the right of access to the courts. The nonmoving party's right of access to the courts is not mentioned in the statute, and is only implied to the extent that he or she must make the showing required by the statute or face dismissal. The statute

draws no comparison between these rights. The only tension between them is created by application of the statute, rather than its plain language. The statute is an expedited procedural mechanism to weed out meritless cases when the defendant is engaged in activities protected by the First Amendment. A litigant has a constitutional right to access the courts even when suing a defendant on the basis of the defendant's petitioning activity, as long as it is a meritorious case.

[¶31] Instead of adding our own speculations, we should now affirm our previous understanding of the legislative intent of the anti-SLAPP statute. We have previously noted that "[b]ecause winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions . . . are inadequate." *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842 (quotation marks omitted). The special motion, therefore, "is a statutory creature designed to protect certain defendants from meritless litigation." *Id.* ¶ 15. "[C]ontinued litigation," not access to the courts, is the "harm that the statute seeks to prevent." *Id.* "The special motion to dismiss created by the anti-SLAPP statute is intended . . . to dispose of baseless lawsuits that are brought not to vindicate the plaintiff's rights but to punish the defendant for exercising her constitutional right to petition the

24

government . . . ." *Nader I*, 2012 ME 57, ¶ 42, 41 A.3d 551 (Silver, J., concurring); *see also Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 6, 847 A.2d 1169.

[¶32]  Other courts agree.  In interpreting a Massachusetts anti-SLAPP statute, which this Court has noted is "nearly identical to 14 M.R.S. § 556," *Nader I*, 2012 ME 57, ¶ 22, 41 A.3d 551 (Alexander, J., majority), the Massachusetts Supreme Judicial Court recognized that the "apparent purpose of the anti-SLAPP statute [is] to dispose expeditiously of meritless lawsuits that may chill petitioning activity." *Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935, 943 (Mass. 1998).  There, the Massachusetts Supreme Judicial Court noted that the statute in fact impinged on the adverse party's right to petition. *See id.*

[¶33]  Rather than deducing the legislative intent of the statute and using it as the basis of our analysis, the Court has misconstrued the purpose of the statute, taken on the job of the Legislature and invented a burdensome new procedure.  It requires the trial court to hold an evidentiary hearing and to weigh evidence, fact-finding neither required by the statute nor in line with the Legislature's intent.  Additionally, the trial court must on its own authority decide whether the plaintiff has met the burden by a preponderance of the

evidence. Court's Opinion ¶ 18. This defeats the purpose of the statute: to provide for expedited consideration of a plaintiff's allegations and minimize litigation costs associated with meritless suits. *See Bradbury v. City of Eastport*, 2013 ME 72, ¶ 18, 72 A.3d 512. We should defer to the Legislature to make such significant changes to the statute.

B.     Constitutional Violations

[¶34]  The Court's creation of an evidentiary hearing presents conflicts with the Maine Constitution. Article I, section 19 of the Maine Constitution provides that "[e]very person, for an injury inflicted on the person or on the person's reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay." Similarly, article I, section 20 "guarantees to parties in all civil suits the right to a jury trial, except where by the common law and Massachusetts statutory law that existed prior to the adoption of the Maine Constitution in 1820 such cases were decided without a jury." *City of Portland v. DePaolo*, 531 A.2d 669, 670 (Me. 1987). Because the Court now requires fact-finding by an evidentiary hearing that addresses the merits of a case without providing litigants with

access to a jury, the new anti-SLAPP procedure violates the Maine Constitution.

[¶35]  The First Circuit, in addressing Maine's anti-SLAPP statute, upheld its application in the face of a due process challenge.  *Godin v. Schencks*, 629 F.3d 79, 81-82 (1st Cir. 2010).  The court noted that article I, section 20 of the Maine Constitution is an analogue to the Seventh Amendment of the United States Constitution,[11] and that because the anti-SLAPP statute "is a relatively young statute, not much construed by the state courts, . . . there is no reason to think the state courts would construe [the statute] so as to be incompatible with the Seventh Amendment."  *Id.* at 90 n.18.  However, the court did express concern that "to the extent it might be read to allow . . . a judge to resolve a disputed material issue of fact, [the statute] would then preclude a party from exercising its Seventh Amendment rights to trial by jury on disputed issues of material fact."  *Id.*

[¶36]  The United States District Court for the District of Massachusetts, remarking upon our holding in *Nader I*, stated that the "Supreme Judicial

---

[11]  The United States Constitution guarantees citizens the right to a trial by jury.  U.S. Const. amend. VII.  This right extends to any action analogous to those for which individuals could seek relief in the courts at common law in 1791.  *See Curtis v. Loether*, 415 U.S. 189, 195-96 (1974); *see also Nat'l Labor Relations Bd. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937).  The Seventh Amendment of the United States Constitution does not apply to the states.  *See, e.g.*, *Vallavanti v. Armour & Co.*, 162 N.E. 689, 690 (Mass. 1928).

Court of Maine got it right." *Hi-Tech Pharms., Inc. v. Cohen*, No. 16-10660-WGY, 2016 U.S. Dist. LEXIS 130038, at *11 (D. Mass. Sept. 22, 2016). The court reasoned that requiring "more than a prima facie showing that . . . petitioning activities ha[ve] no reasonable basis in fact or law . . . would necessarily impinge on the parties' Seventh Amendment right to a jury trial," because it "would require [the court] to make factual findings and credibility determinations that the Constitution reserves to a properly constituted jury of the people." *Id.* at *11-12. The court there emphasized that if it were required to make findings by a preponderance of the evidence, it would have to "decide which of the affidavits submitted by the parties in connection with the special motion to dismiss it believed." *Id.* at *12. "Such findings are reserved to the fact-finder and, absent the parties' waiver of their right to a trial by jury, are not properly within the [c]ourt's domain." *Id.* Finally, the court noted that "[i]mposing a low bar on plaintiffs . . . also comports with the purpose of [anti-SLAPP] legislation, which is only to prevent meritless suits from imposing significant litigation costs and chilling protected speech." *Id.* at *13 (emphasis and quotation marks omitted).

[¶37] Similarly, the Washington Supreme Court has held that an anti-SLAPP statute requiring a trial judge to make a factual determination by

clear and convincing evidence of the probability of the plaintiff prevailing on his or her claim is unconstitutional. *Davis v. Cox*, 351 P.3d 862, 873-74 (Wash. 2015). Because such a statute "creates a truncated adjudication of the merits of a plaintiff's claim, including nonfrivolous factual issues, without a trial," it violates the right to trial by jury.[12] *Id.* at 874.

[¶38] For the same reasons why the First Circuit expressed concern with our anti-SLAPP statute, the District of Massachusetts upheld a preliminary prima facie showing under the Massachusetts anti-SLAPP statute, and the Washington Supreme Court held the Washington anti-SLAPP statute to be unconstitutional, the new procedure the Court has created for our anti-SLAPP law is unconstitutional. Imposing an additional burden of proof upon the plaintiff, to prove facts by a preponderance of the evidence, requires that the trial court evaluate evidentiary issues that are more than likely to be in dispute. The trial court will be forced to weigh evidence that, in the best-case scenario, has been developed through limited discovery, and in the worst-case scenario has been appropriated from the parties' filings surrounding the motion to dismiss. The former instance replaces a jury with a

---

[12] The court noted that frivolous litigation and sham litigation are not constitutionally protected. *Davis v. Cox*, 351 P.3d 862, 873 (Wash. 2015) (citing *Bill Johnson's Rests. v. Nat'l Labor Relations Bd.*, 461 U.S. 731, 743 (1983); *BE&K Constr. Co. v. Nat'l Labor Relations Bd.*, 536 U.S. 516, 524-26 (2002)).

judge relying upon a scanty factual record, and the latter replaces the jury with a judge relying upon possibly as little as the motions themselves.

[¶39]  For the above reasons, the Court's invented procedure abrogates litigants' rights of access to justice and the right to a jury trial on what could be meritorious factual disputes.

C.    *Nader I*

[¶40]  Since 2012, we have applied a burden of proof that complies with the plain meaning of the anti-SLAPP statute, the legislative intent of the statute, and our Constitution.  In *Nader I*, we recognized that the "converse summary-judgment-like standard" developed in *Morse Brothers*, 2001 ME 70, 772 A.2d 842, and applied in *Maietta Construction*, 2004 ME 53, 847 A.2d 1169, "burden[ed] the constitutional rights at issue" when assessing a section 556 special motion to dismiss.  2012 ME 57, ¶¶ 32-33, 41 A.3d 551.  We therefore held that section 556 "requires only that the nonmoving party provide prima facie evidence to support its burden of showing that the moving party's petitioning activity was 'devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party.'" *Id.* ¶ 33 (quoting 14 M.R.S. § 556).  We stated that "a nonmoving party's action or claim should be allowed to proceed

30

unless the nonmoving party . . . by pleading or affidavits, fails to make a prima facie showing that any, rather than all, of the petitioning activities . . . were devoid of any reasonable factual support or arguable basis in law." *Id.* ¶ 36.

[¶41]  The prima facie showing that we established in *Nader I* avoided the constitutional impediments that the Court's newly-established procedure creates.  We recognized in *Nader I* that the statute was not intended as a substantive abrogation of common law causes of action, rather, it was a procedural mechanism to be treated like other dispositive motions.  *See id.* ¶ 30.  The Legislature retains the power to determine which types of claims are available in court by limiting or even abolishing common law tort claims and causes of action.[13]  *See Peters v. Saft*, 597 A.2d 50, 52-54 (Me. 1991); *Curtis v. Lehigh Footwear, Inc.*, 516 A.2d 558, 560 (Me. 1986).  But any subrogation by the Legislature of a common law cause of action needs to be clearly stated on the face of the statute.  *See State Farm Mut. Auto. Ins. Co. v. Koshy*, 2010 ME 44, ¶ 34, 995 A.2d 651 ("We will not interpret an ambiguous statute to be in derogation of the common law unless the Legislature clearly expressed the intent to diverge from the common law by the clear and unambiguous

---

[13]  The Legislature has acted to abolish causes of action in other contexts, such as alienation of affection claims, 14 M.R.S. § 301 (2016), and claims relating to recreational use of land, 14 M.R.S. § 159-A (2016).

language of the statute or by necessary implication.") The Legislature did not do so here. Maine's anti-SLAPP statute is a procedural mechanism not intended to substantively affect any existing common law cause of action. *See Bradbury v. City of Eastport*, 2013 ME 72, ¶ 9, 72 A.3d 512 ("The purpose of the anti-SLAPP statute and the special motion to dismiss is to provide a procedural mechanism to dispose of baseless lawsuits that are brought not to vindicate the plaintiff's rights but to punish the defendant . . . ." (quotation marks omitted)).

[¶42] The holding in *Nader I* was "consistent with usual motion-to-dismiss practice," specifically because—unlike the new procedure—it permitted the trial court "to infer that the allegations in a plaintiff's complaint and factual statements in any affidavits responding to a special motion to dismiss are true." *Nader I*, 2012 ME 57, ¶ 33, 41 A.3d 551. That was, and continues to be, the correct approach. Justice Silver, writing in concurrence in that case, noted that "the Court must continue to view this statute as a procedural mechanism consistent with other dispositive motions rather than as a substantive burden on a plaintiff's ability to bring a valid cause of action."[14] *Id.* ¶ 40 (Silver, J., concurring). In creating an extra step not

---

[14] "[N]ot only has this statute been used by different parties than those intended, but it has served an entirely different purpose than the one intended. The 'Goliath' who abuses other forms

called for by the statute, there is an increased danger of the statute preventing otherwise meritorious cases from reaching a jury. Under the Court's new procedure, legitimate, meritorious claims brought in good faith may be barred regardless of whether a plaintiff would be able to meet his or her burden on a motion to dismiss or a motion for summary judgment that would be brought during the regular course of a lawsuit.

[¶43] As applied in this case, the application of the Court's new requirement of an evidentiary hearing substantially affects a traditional common law cause of action: defamation. The facts in this case would survive a motion for summary judgment by the defendant, where Gaudette would benefit from all favorable inferences and all disputed issues of fact would be left to the determination of the jury. *See* M.R. Civ. P. 56. However, under this new fact-finding procedure, a judge could dismiss the action upon a factual determination made by a preponderance of the evidence, despite Gaudette disputing those facts.

[¶44] Requiring plaintiffs to prove the statutory elements by a preponderance of the evidence in an evidentiary hearing imposes a

of petitioning to harass 'David' has now adopted the special motion to dismiss as another obstacle to throw in David's path when he legitimately seeks to petition the court for redress." *Nader v. Me. Democratic Party* (*Nader I*), 2012 ME 57, ¶ 45, 41 A.3d 551 (Silver, J., concurring) (explaining that the anti-SLAPP statute has "rarely, if ever," been used to combat the types of meritless litigation it was intended to combat).

substantive burden that goes beyond what the Court contemplated in *Nader I*. This new procedure burdens the right of access to the courts guaranteed by the Maine Constitution, and violates a litigant's constitutional right to a jury trial. *See* Me. Const. art. I, §§ 19-20.

[¶45] For these reasons I disagree with the Court's holding and the imposition of a new procedural step for trial courts to undertake when faced with a special motion to dismiss pursuant to Maine's anti-SLAPP statute. The significant changes made to Maine's anti-SLAPP statute by the Court's decision should be left to the Maine Legislature.

[¶46] I respectfully dissent.

---

George T. Dilworth, Esq. (orally), and Amy K. Olfene, Esq., Drummond Woodsum, Portland, for appellant Terry M. Davis

Gene R. Libby, Esq., Tyler J. Smith, Esq. (orally), and Tara A. Rich, Esq., Libby O'Brien Kingsley & Champion LLC, Kennebunk, for appellee Norman Gaudette

York County Superior Court docket number CV-2015-97
FOR CLERK REFERENCE ONLY