**Margie DAVIS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MERCY DOUGLAS and PMA Group), Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 8, 2000.

Decided April 11, 2000.

Richard Rosenblitt, Philadelphia, for petitioner.

Robert F. Kelly, Jr., Media, for respondent.

Before DOYLE, President Judge, and COLINS, J., McGINLEY, J., SMITH, J., PELLEGRINI, J., FLAHERTY, J., and LEADBETTER, J.

LEADBETTER, Judge.

Margie Davis (claimant) appeals from an order of the Workers' Compensation Appeal Board (Board), which affirmed the decision and order of the Workers' Compensation Judge (WCJ) granting employer's termination and medical review petitions. The question presented for review is whether the opinion of employer's medical expert constitutes sufficient, competent evidence to satisfy employer's burden thereby warranting the termination of claimant's benefits. After review, we affirm.

Claimant sustained a work-related back injury on February 17, 1988, while working for her employer, Mercy Douglas Hospital. Claimant subsequently received total disability benefits following the litigation of her claim petition. In June 1993, employer filed a petition to terminate benefits alleging that claimant was fully recovered from her work-related injury as of June 2, 1993, and a petition to review, which alleged that claimant's medical treatment subsequent to June 2, 1993, was not reasonable, necessary, or related to her February 1988 work injury.

In support of its petition, employer presented the deposition testimony of Dr. Marvin Kallish, a board certified orthopedic surgeon. Dr. Kallish examined claimant on June 2, 1993, and after the examination, as well as a review of claimant's medical records and reports, he opined that claimant sustained a low back strain/sprain in the 1988 work incident and that his exam revealed no evidence of an ongoing disability with respect to that injury. Dr. Kallish further opined that claimant's

complaints of pain were not supported by his examination or the medical reports that he reviewed. Finally, Dr. Kallish testified that claimant no longer required medical treatment for her work-related injury. Employer also presented the deposition testimony of a private investigator to establish that claimant had worked part-time for another employer since her 1988 work injury.

In opposition to employer's termination petition, claimant presented the deposition testimony of one of her treating doctors, Stephen Fabian, M.D., a family practitioner. Dr. Fabian testified that he began treating claimant with respect to her work injury in April 1988 and as a result of that injury, claimant suffers from chronic lumbar sprain and low back syndrome with chronic lumbar nerve root irritation and radiculapathy effecting the lower right extremity. According to Dr. Fabian, claimant was not capable of returning to her job. Dr. Fabian further testified that claimant's medical treatment was reasonable and necessary. In addition, claimant testified on her own behalf stating her symptoms and limitations. She further denied that she has earned any wages since her work injury.

After review of the evidence of record, the WCJ granted employer's petitions, concluding that employer had established that claimant's disability due to her February 1988 work injury had ceased as of June 2, 1993, and that all medical treatment at issue was not reasonable or necessary. In reaching this conclusion, the WCJ accepted as credible and persuasive the testimony of employer's witnesses, found claimant not credible and rejected her testimony as well as that of her medical expert to the extent that it differed from that of Dr. Kallish. On appeal, the Board affirmed. The present appeal followed.

On appeal, claimant contends that employer failed to present sufficient, competent evidence to support the termination of her benefits because employer's medical witness failed to testify that claimant could return to work without restrictions. Specifically, claimant notes that Dr. Kallish testified as follows on cross-examination:

Q. Given [claimant's] status, you would not have placed any restrictions on her returning to a nursing assistant job as you understand that job to be?

A. I probably would have placed restrictions on her because I feel that after a period of nonemployment for an extended period such as she has had, I probably would have put some restriction on her for a month or six weeks to allow her to become reconditioned. So I would probably suggest that she not lift anyone by herself or attempt to lift anything real heavy for the first month or six weeks and strengthen the back and just generally strengthen her legs, her arms. Everything needs to be reconditioned a little bit by starting back into the job. And at the end of a six-week period, I would think that she would be sufficiently able to then carry out the normal job.

Deposition of Marvin N. Kallish, M.D. at 43 (R. 53a).

On redirect examination, Dr. Kallish further testified as follows:

Q. Doctor, regarding the restrictions you just discussed, would these be the result of what you would feel are related to the work-related incident as described?

A. *Well, I'm putting those restrictions on anyone who has been out of a moderately heavy type of job for a long period of time.* Whether we can justify her being out of work for [5½] years because of the work-related incident or not is opening another kettle. *But assuming just the fact that she has not worked for [5½] years and she is only 30 years old, ... she would be able to go back, I think, in at full-time and just limit her activity for about a month or six weeks.* And then she should be able to recondition herself. I would do that

if I were treating her, or I would think it's fair to do it, just breaking her in slowly.

Q. Did you indicate in your report anything regarding restrictions on her return to work?

A. No, sir. I said she could return to her full job. I think that she could return to her full job as I said in my report, full hours, full job. I just think that—giving an individual the benefit of the doubt, I think that those minimal restrictions—and they are very minimal, the restrictions I outlined—would just help her to get back into the full work force. And she would be able to work at a full eight-hour day or her normal daily shift where she's working an eight-hour or ten-hour shift.

*Id.* at 43–45 (emphasis added). (R. 53a–55a). Based on this testimony, claimant contends that since employer's medical witness testified that it was necessary for her to return to work with restrictions, such testimony is insufficient to support the termination of her benefits. We disagree.

Recently, in *Parker v. Workers' Compensation Appeal Bd. (Dock Terrace Nursing Home)*, 729 A.2d 102 (Pa.Cmwlth. 1999), this court reiterated the employer's burden of proof in a termination proceeding:

> It is well established that an employer seeking to terminate workers' compensation benefits bears the burden by proving by substantial evidence either that the employee's disability has ceased, or that any current disability arises from a cause unrelated to the employee's work injury. Employer

must show that any continued disability is the result of an independent cause or the lack of a causal connection between the continued disability and the original compensable injury . . . . there is no burden on the claimant to prove anything at all.

*Id.* at 104–05 (citations omitted).

■ Applying the above standards to evaluate Dr. Kallish's testimony, we conclude that it is sufficient to meet employer's burden of proof. Dr. Kallish clearly testified that claimant's physical examination was normal, there was no evidence of any ongoing disability with respect to her 1988 work injury, that claimant was capable of returning to her time of injury job and that claimant's complaints of pain were not supported by the exam or medical tests. Dr. Kallish's opinion that minimal restrictions should apply on her immediate return to employment did not render his opinion equivocal or insufficient because such restrictions were not related to her work injury. Rather, Dr. Kallish opined that such restrictions were necessary because claimant had been out of the work force for such a long period of time. Moreover, he indicated that he would apply such restrictions to any person who had been out of the work force for a significant period of time and was returning to a moderately heavy job. He never opined that such restrictions were necessary because of the injury itself. Accordingly, we conclude that Dr. Kallish's testimony, which was credited by the WCJ, is sufficient to support employer's burden and justify the termination of claimant's benefits.[1]

---

1. This court's decision in *Parker* does not command a different result. In *Parker,* this court concluded that the testimony of employer's medical expert, which had been credited by the WCJ, was insufficient to support employer's burden in the termination proceedings because the expert testified that although claimant had fully recovered from her work-related injury, the chiropractic treatment that the claimant had received for her work-related injury left her "decondi-

tioned" and, therefore, unable to return to her pre-injury position. According to the expert, the deconditioning was the result of her medical care and required that claimant participate in an active exercise program to be weaned off of her chiropractic care. There, we concluded that such testimony was insufficient to support employer's burden even though the claimant had recovered from her work-related injury because the evidence presented demonstrated that claimant's decondi-

Claimant has also raised two other issues on appeal, namely whether Dr. Kallish's opinion is insufficient to support the conclusion that claimant has fully recovered from her work-related injury because he failed to testify that claimant's L4 nerve root condition had resolved or that such condition was reversible. We agree with employer that these issues were not properly preserved for appellate review. After a review of the papers submitted on appeal to the Board, it is clear that neither issue was presented for the Board's review. Accordingly, pursuant to Pa. R.A.P. 1551, these issues have been waived and will be not addressed on appeal.[2]

Accordingly, the order of the Board is affirmed.

Judge McGINLEY dissents.

## ORDER

AND NOW, this 11th day of April, 2000, the order of the Workers' Compensation Appeal Board in the above captioned matter is affirmed.

tioned state was the result of the medical treatment she received for her work injury. Such a causal connection to the work-related injury is not present here.

2. Rule 1551 provides that this court shall not consider any issue which was not raised before the tribunal below. Pa. R.A.P. 1551(a).