IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James F. Buckley,                          :
                    Petitioner             :
                                           :
        v.                                 :  No. 1456 C.D. 2022
                                           :
Suburban Propane Partners, LP              :
(Workers' Compensation Appeal              :
Board),                                    :
                                           :
                    Respondent             :  Submitted:  October 10, 2023

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                   FILED:  November 1, 2023

        James F. Buckley (Claimant) petitions this Court for review of the November
30, 2022 order of the Workers' Compensation Appeal Board (Board), affirming the
decision of workers' compensation judge (WCJ) Alan Harris (Judge Harris) that
granted a termination petition filed by Suburban Propane Partners, LP (Employer).
The issue before this Court is whether substantial evidence supports Judge Harris's
finding that Claimant had fully recovered from his work injury and that Claimant's
work restrictions were unrelated to his work injury.  After review, we affirm.

## I.  Background

        Claimant suffered a work injury to his lower back and neck on January 29,
2019, after slipping on ice while delivering fuel to one of Employer's customers.
Employer issued a medical-only Notice of Compensation Payable (NCP), accepting
liability for Claimant's work injury, which the NCP described as a "lower back area

injury." Certified Record (C.R), Item No. 6, Finding of Fact (F.F.) No. 1. Claimant worked light duty for approximately six months before his physician, Joseph Paz, D.O., took him out of work. Employer issued an amended NCP on August 23, 2019, in recognition of Claimant's right to wage loss benefits. On July 7, 2021, Employer filed a termination petition, alleging that Claimant had fully recovered from his work injury, based on the opinion of Rodwan Rajjoub, M.D., who conducted an independent medical examination (IME) of Claimant on June 29, 2021. In support of its termination petition, Employer presented Dr. Rajjoub's deposition testimony, as well as a surveillance video of Claimant that was recorded on November 6, 2020, and photographs Claimant posted on social media. Claimant testified live before Judge Harris and presented Dr. Paz's deposition testimony. Claimant also presented deposition testimony he gave on October 14, 2020, as part of a previous termination proceeding.[1]

## A. Employer's Evidence

Employer submitted into evidence copies of several photographs posted on Claimant's Facebook page from April 2020 through August 2021 that demonstrated Claimant engaged in various activities, such as fishing, holding his grandson, and operating a table saw. Still photographs taken from the November 6, 2020

---

[1] Judge Harris denied Employer's prior termination petitions in a February 12, 2021 decision. While Judge Harris credited Dr. Rajjoub's opinion that many of Claimant's back and neck symptoms preexisted the January 29, 2019 work injury, he found that Dr. Rajjoub failed to suitably explain the basis for his opinion that Claimant had fully recovered from the work injury. Judge Harris also granted Claimant's review petition, expanding Claimant's work injury – a lower back strain superimposed upon preexisting degenerative lower back conditions – to include a cervical strain and sprain that caused a traumatic disc injury at C5-6 with associated radiculopathy. Additionally, Judge Harris found that Claimant failed to prove his chronic traumatic encephalopathy (CTE) and cognitive issues were caused by the work injury.

surveillance video appeared to depict Claimant carrying windows into a house that Claimant and his wife were in the process of renovating.

Dr. Rajjoub, a board-certified neurosurgeon, testified that he performed an IME of Claimant on June 29, 2021. At that time, Claimant advised Dr. Rajjoub that he fell at home approximately four months earlier, causing a temporary increase in his lower back pain. By the date of the IME, Claimant reported mild cervical pain with numbness and tingling in his upper extremities, and mid-back pain, with numbness and tingling in his left foot. He also reported suffering from headaches two to three days a week. Claimant treated his current pain symptoms with steroid injections, Tramadol, physical therapy, and chiropractic treatment. Overall, Claimant's pain symptoms were less significant than what he described during an IME Dr. Rajjoub conducted during the first termination proceeding. Dr. Rajjoub's findings upon physical examination indicated improvement in Claimant's cervical spine range of motion, which Dr. Rajjoub stated was "almost back to normal." C.R., Item No. 25, Rajjoub Dep., 10/28/21, at 27. Claimant walked normally, his gait was steady, and he could walk on his heels and toes. He had normal range of motion in his lumbar spine, and Dr. Rajjoub found no evidence of lumbar herniation in Claimant's recent magnetic resonance imaging (MRI) studies. Dr. Rajjoub did not detect the presence of radiculopathy based on Claimant's responses to reflex and sensation testing.

Dr. Rajjoub noted that Claimant's pre-injury medical records documented a history of headaches, neck pain, and lower back pain, as well as numbness and tingling in his hands and left leg. Diagnostic studies taken prior to the January 29, 2019 work injury, including 2015 and 2016 MRIs of Claimant's lumbar and cervical spine, revealed multi-level degenerative disc disease and bulging discs. Claimant's

3

medical records indicated that Claimant treated his pre-injury symptoms with Tramadol. Dr. Rajjoub also understood that Claimant suffered a stroke in 2012, and he was diagnosed with CTE, with mild to moderate cognitive function deficit.

Ultimately, Dr. Rajjoub opined that Claimant had fully recovered from his work injury, which Judge Harris found in his February 12, 2021 decision to consist of a lower back strain superimposed over preexisting degenerative lower back conditions and disc disease, and a cervical strain and sprain, causing a traumatic disc injury at C5-6, with radiculopathy. Dr. Rajjoub noted that Claimant's cervical injections were placed at the C3-4, C4-5, and C7-T1 levels, and not C5-6. The photographs of Claimant fishing and working on his house also supported Dr. Rajjoub's opinion that Claimant had fully recovered from his work injury. Dr. Rajjoub saw no need to limit Claimant's activity as Claimant "did not limit himself." Rajjoub Dep. at 35. Dr. Rajjoub also opined that Claimant's work injury did not require further treatment, as Claimant had returned to the pre-injury condition documented in his 2015 and 2016 MRIs. Dr. Rajjoub felt that Claimant's current medical treatment solely addressed his preexisting degenerative disc disease.

Dr. Rajjoub recognized, however, that Claimant had been off work for over two years. Therefore, Dr. Rajjoub recommended that Claimant return to light work before progressing to his pre-injury job. Dr. Rajjoub did not believe that Claimant's work injury limited his ability to return to work.

During cross-examination, Dr. Rajjoub acknowledged that Claimant's *subjective* complaints had not changed over time; however, Dr. Rajjoub could not corroborate Claimant's subjective complaints with objective findings. Dr. Rajjoub reiterated that Claimant's MRI results from 2020 were "[m]ore compatible" with those documented in his pre-injury MRIs. *Id.* at 41. Dr. Rajjoub's IME report from

4

the first termination proceeding noted that Claimant's forward flexion in his cervical spine was 90 degrees, which Dr. Rajjoub considered normal. His cervical extension was "a little bit limited" at 45 degrees. *Id.* at 44. At the June 29, 2021 IME, however, Claimant was able to extend his neck 70 degrees, a normal finding. Claimant's forward and lateral cervical flexion were also normal at the June 29, 2021 IME. Dr. Rajjoub advised that range of motion tests are objective, rather than subjective.

Dr. Rajjoub acknowledged that Claimant had degenerative arthritis prior to the January 29, 2019 work injury, a condition for which Claimant had not been "cured[.]" *Id.* at 50. With regard to the work injury, however, Dr. Rajjoub maintained that Claimant had returned to his pre-injury "baseline." *Id.* As for Claimant's return to work, Dr. Rajjoub indicated that any patient who had been out of work for an extensive period should return to light duty before progressing to regular-duty work. Dr. Rajjoub stressed that any restrictions on Claimant's ability to return to work were not related to his work injury.

**B. Claimant's Evidence**

In an October 14, 2020 deposition, Claimant testified that he continued to experience daily pain in his neck and back as a result of the January 29, 2019 work injury. Claimant advised that even the slightest physical effort would trigger his symptoms, and he could not sit for long periods or walk more than a few blocks. Claimant's lower back pain radiated down his left leg into his calf. He also suffered frequent headaches that would last all day. Claimant treated his back and neck symptoms with injections, and he attended physical therapy for his back. Claimant's symptoms prevented him from fishing or working on cars. Additionally, Claimant noticed a change in his vision and memory, although he acknowledged experiencing mild memory issues prior to the work injury. Later in his testimony, Claimant stated

that his memory problems began in 2012 after he suffered a stroke while working as an emergency medical technician (EMT).

During cross-examination, Claimant acknowledged sustaining a prior work injury "somewhere between 2012 and 2015[.]" C.R., Item No. 16, Claimant Dep., 10/14/20, at 31. Upon further questioning, Claimant agreed that he sustained three additional work injuries, including a neck strain, in 2006 while employed as an EMT. Claimant could remember undergoing osteopathic manipulation therapy to his spine and neck prior to the January 29, 2019 work injury, but he could not remember the dates he received such therapy. Claimant did not recall being disabled from working as an EMT in 2015 due to neurological issues but he remembered filling out disability forms in 2017. Claimant likewise did not recall having a cervical spine MRI in 2006 or having computerized tomography (CT) and MRI studies of his neck taken in 2015. He did agree that MRIs of his brain were taken prior to January 29, 2019. Claimant conceded that he sustained "probably close to 20" head injuries prior to January 29, 2019, including 10 incidents that occurred when Claimant was less than 5 years old. *Id.* at 48. Additionally, Claimant rode his bicycle "off a bridge" when he was 10, he was involved in a motor vehicle accident at age 17, and, at some point between 2010 and 2012, a car that was improperly jacked fell on Claimant's head. *Id.* at 49. Claimant agreed that he had physical therapy for a muscle strain in his back, but he could not recall any other specifics. Claimant denied taking Tramadol for back pain prior to the January 29, 2019 work injury, but he did take Flexeril for the back muscle strain. Claimant stated that it was "feasible" that he complained about frequent headaches and vision problems in September 2018. *Id.* at 51. It was "fair to say" that one of Claimant's treatment providers advised Claimant prior to January 29, 2019, that he had CTE. *Id.* at 60.

6

At a November 3, 2021 hearing before Judge Harris, Claimant asserted that he has not fully recovered from his work injury. Claimant receives injections in his neck and back every few months, which provide "some relief[.]" C.R., Item No. 12, Notes of Testimony (N.T.), 11/3/21, at 14. Claimant's neck pain radiates from the base of his skull down to his shoulders. Dr. Paz recently recommended that Claimant receive physical therapy for his neck symptoms, which are worse than his back pain. He no longer receives physical therapy for his back pain. Claimant continues to experience numbness and tingling in his hands, which he treats with Lyrica. Periodically, Claimant suffers intense nerve pain in his arms and left leg. Claimant rated his neck pain at four or five on "a good day." *Id.* at 21. At times, his pain is a six or seven. Claimant's back pain is "much more tolerable" and "pretty much a four." *Id.* Claimant advised that he remains out of work, and he does not believe that he could return to his pre-injury job. Claimant asserted that if he tries to perform any labor, such as hanging a picture, his neck pain increases, and he loses sensation in his arms. Claimant also suffers from various ailments that are unrelated to his work injury, including visual problems attributed to CTE and urinary dysfunction.

During cross-examination, Claimant acknowledged having diagnostic studies of his back and neck for "two automobile accidents[.]" *Id.* at 25. He did not recall any incidents prior to the January 29, 2019 work injury that would have caused pain in his neck and lower back. Claimant denied telling Dr. Rajjoub that his neck pain had improved. Claimant agreed that Dr. Paz's office is a two-hour drive from his home. Regarding his physical activity, Claimant stated that he goes fishing with his grandson "once in a while." *Id.* at 31. Claimant did not deny that he and his wife were in the process of renovating a home; however, Claimant asserted that he could only perform small tasks, such as using a screw gun and stapling insulation into

7

place. He denied performing any demolition of the house after the first day, and he did not help with any electrical or plumbing work. Although Claimant testified that it "hurts too much to get up and down off the floor[,]" he admitted having sat on the porch to install flooring. *Id.* at 32, 35. Claimant estimated that the heaviest item he lifted was a 2x4 board that weighed five to seven pounds.

At a subsequent hearing before Judge Harris held on February 2, 2022, Claimant addressed the photographs Employer introduced from Claimant's Facebook page. Regarding the photographs of Claimant fishing, Claimant advised that, prior to the work injury, he would go fly fishing and walk in streams for several miles. Currently, Claimant can no longer cast a fishing line and he fishes at a pond by dropping a line into the water. Claimant denied installing a plank ceiling at his house. Claimant's wife performed any interior painting and Claimant only painted a six- or seven-inch section on the exterior of the home. Claimant acknowledged that one photograph depicted him carrying window frames, but he asserted that the frames did not contain glass and each frame weighed only three or four pounds. Claimant denied having any accidents or injuries after the January 29, 2019 work injury, beyond minor cuts to his fingers that he sustained while working on the house.

Dr. Paz is board certified in anesthesia and pain medicine. In a July 6, 2020 deposition taken for the first termination proceeding, Dr. Paz testified that he first examined Claimant on October 28, 2019. Claimant presented with neck and lower back pain and frequent headaches, which he rated as an average of 3 "plus" out of 10. C.R., Item No. 17, Paz Dep., 7/6/20, at 9. Claimant related a history of motor vehicle accidents and occasional neck and lower back pain throughout the years, but he had not seen anyone for those symptoms in the year prior to the work injury.

8

Claimant had "some limitations" in his cervical and lumbar range of motion, with cervical tenderness and muscle spasm. *Id.* at 14. Claimant's straight leg test was negative, and his reflexes and sensation were normal. Dr. Paz reviewed cervical MRIs from February 3, 2019 and March 22, 2019, and a lumbar MRI from March 11, 2019. The cervical MRIs revealed acute disc protrusions at C5-6, with stenosis, which Dr. Paz related to Claimant's work injury. The lumbar MRI documented a herniated disc at L5-S1, which Dr. Paz also related to the work injury. Dr. Paz also identified the presence of degenerative arthritis in both the cervical and lumbar MRIs. Dr. Paz recommended that Claimant continue treating with his existing pain management doctor and remain off work.

At a subsequent appointment on December 12, 2019, Claimant reported non-radiating neck and lower back pain. Reflex, sensation, and strength test results were normal. Claimant exhibited cervical muscle spasm. At a February 6, 2020 appointment, Claimant reported pain radiating from his elbows to his fingers, with numbness and tingling. Dr. Paz examined Claimant again on the date of his deposition, July 6, 2020, at which time Claimant reported worsening neck and upper extremity pain. On cross-examination, Dr. Paz acknowledged that he did not review a pre-injury lumbar MRI from 2015, and he was not aware that Claimant underwent a cervical MRI in September 2016. The only medical records Dr. Paz reviewed that predated the January 29, 2019 work injury came from Claimant's family doctor, and those records were limited to the year leading up to the work injury.

Dr. Paz testified by deposition for the instant termination petition on January 19, 2022. Dr. Paz conducted a telemedicine visit with Claimant on December 17, 2020, during which Claimant reported headaches and neck and back pain that radiated to his extremities. Claimant advised that his neck and back pain have

increased since the work injury, although steroid injections to his neck improved his symptoms by 30-40%. Claimant otherwise treated his symptoms with Tramadol, anti-inflammatories, Tylenol, and muscle relaxants. Dr. Paz advised that, while he prescribes some of Claimant's medication, he is largely responsible for coordinating Claimant's treatment with other providers.

Dr. Paz next examined Claimant in-person on July 21, 2021. Claimant continued to receive cervical and lumbar injections to address headaches and pain in his neck, lower back, upper extremities, and lower left leg that Dr. Paz related to the January 29, 2019 work injury. Claimant also described burning pain in his legs and arms. Claimant exhibited limited range of motion in his cervical and lumbar spine, with tenderness in both areas and mild cervical spasm. Claimant had a positive result in his straight leg test on the left side and left notch sciatic tenderness. At a September 27, 2021 appointment, Claimant reported an increase in his pain symptoms, which he described as a 7 or 8 out of 10. Dr. Paz's findings on physical examination remained the same as those he documented on July 21, 2021. At that time, Dr. Paz began prescribing Claimant Lyrica for nerve pain. During a telemedicine appointment on October 26, 2021, Claimant advised Dr. Paz that the Lyrica helped his neuropathic pain. Claimant rated his neck pain at a 6 out of 10 and his back pain at a 5 out of 10. Dr. Paz recommended that Claimant continue treating his symptoms with Tramadol, Lyrica, and muscle relaxants. He also recommended that Claimant remain out of work. Dr. Paz referred Claimant for a surgical consultation with a neurosurgeon.

Dr. Paz reviewed a March 5, 2020 cervical MRI that documented an increase in Claimant's degenerative disc disease, findings that Dr. Paz considered to be post-traumatic and related to Claimant's work injury. Dr. Paz also reviewed a recent

10

cervical MRI from September 16, 2021, the results of which Dr. Paz deemed largely consistent with Claimant's prior MRIs, with additional disc herniations documented at C5-6 and C6-7.

Dr. Paz opined that Claimant is disabled from gainful employment and incapable of working in any capacity, and he disagreed with Dr. Rajjoub that Claimant had fully recovered from his work injury. Dr. Paz was not "disturb[ed]" by photographs of Claimant engaged in various activities, as Claimant appeared to be "doing a lot of sitting[.]" C.R., Item No. 18, Paz Dep., 1/19/22, at 27.

On cross-examination, Dr. Paz agreed that Claimant did not complain of numbness, tingling, or a burning sensation in his neck or arms during his December 17, 2020 telemedicine appointment. He agreed that Claimant demonstrated full strength in his extremities during the July 21, 2021 office visit and that Claimant's reflexes and sensation were normal. Dr. Paz acknowledged that Claimant took Tramadol before the January 29, 2019 work injury, but Dr. Paz did not know the condition for which it was prescribed. Dr. Paz conceded that he did not administer Claimant's steroid injections, although he read the reports from the physician who gave the injections. Dr. Paz did not review any records from Claimant's physical therapist. Although Dr. Paz understood that Claimant "was an avid fisherman and liked to work on cars[,]" he did not ask Claimant about his out-of-work activities or hobbies. *Id.* at 46. Dr. Paz stated that he "leave[s] it up to [his] patients to limit" their out-of-work activities. *Id.* at 59. Dr. Paz knew that Claimant had a motor vehicle accident prior to the January 29, 2019 work injury and that he "suffered some traumatic brain injury or concussions in the past." *Id.* at 47. While Dr. Paz admitted that he did not review Claimant's pre-injury medical records that discussed

11

Claimant's lower back and neck complaints, he maintained that a pre-injury MRI only documented "mild and minimal" degenerative findings. *Id.* at 20.

### C. WCJ's Decision

In a February 12, 2021 decision, Judge Harris granted Employer's termination petition. Judge Harris noted that he had multiple opportunities to observe Claimant testify. After comparing Claimant's testimony with the surveillance video and photographs taken from Claimant's Facebook page, Judge Harris found that Claimant was frequently evasive and that he was not a credible witness. Although Claimant testified that his condition had worsened, he no longer attended physical therapy. Judge Harris deemed this last admission more consistent with Dr. Rajjoub's finding that Claimant's condition had improved. Claimant did not disclose the work he performed at his house until confronted with the Facebook photographs. Thereafter, Claimant attempted to minimize his involvement. Judge Harris rejected Claimant's testimony regarding his ongoing symptoms, as Claimant would be unable to attempt the work he admitted performing. Furthermore, Judge Harris felt it was "impossible" to eliminate Claimant's activities as the source of his symptoms, rather than the natural progression of his work injury. C.R., Item No. 6, F.F. No. 10.

Regarding the medical testimony, Judge Harris considered that Dr. Paz did not appear to treat Claimant. Rather, Dr. Paz "merely [saw Claimant] often enough to establish a record that he [could] use for testimony." F.F. No. 12. Judge Harris also recognized that Dr. Paz did not have Claimant's pre-injury medical records and, thus, Dr. Paz had little knowledge of Claimant's pre-injury condition. Additionally, Dr. Paz expressed no interest in Claimant's out-of-work activities, and he failed to recognize that Claimant appeared to perform construction work at his house or to consider whether that work aggravated Claimant's condition. Judge Harris found it

nonsensical to restrict an individual's work activities but "not to restrict what he does off the job." F.F. No. 12. Accordingly, Judge Harris found Dr. Paz "less than credible." *Id.* Judge Harris credited Dr. Rajjoub's testimony over that of Dr. Paz, in part because Dr. Rajjoub examined Claimant's pre-work injury records and was, therefore, more familiar with his condition prior to the work injury. Unlike Dr. Paz, Dr. Rajjoub considered Claimant's activity in renovating his house. Judge Harris was also persuaded by Dr. Rajjoub's experience as a neurosurgeon, which rendered Dr. Rajjoub more qualified to comment on Claimant's neurological condition. To the extent the medical testimony conflicted, Judge Harris resolved those conflicts in Dr. Rajjoub's favor. Based on these findings and credibility determinations, Judge Harris found that Claimant had fully recovered from his work injury, effective June 29, 2021, and Judge Harris ordered Claimant's benefits terminated as of that date.

Claimant appealed to the Board, which affirmed Judge Harris in a November 30, 2022 order and opinion. Relevant to the instant appeal, Claimant argued that Dr. Rajjoub's opinion that Claimant should return to work at light duty undermined his opinion that Claimant had fully recovered from his work injury. The Board rejected this argument, as Dr. Rajjoub clearly indicated that any work restrictions were not related to or necessitated by Claimant's work injury. This appeal followed.[2]

## II. Issues

Claimant argues that the Board erred in affirming Judge Harris, as Employer failed to establish that any work restrictions Claimant required upon returning to work were not causally related to his work injury.

---

[2] Our review is limited to determining whether a WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Prebish v. Workers' Comp. Appeal Bd. (DPW/Western Church)*, 954 A.2d 677, 681 n.1 (Pa. Cmwlth. 2008).

13

### III. Discussion

To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased or that *any remaining conditions are unrelated to the work injury*. *Westmoreland County v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). This burden is met when the employer proves either that all physical disability has ceased or that any physical disability stems from an independent cause that is totally separate and distinct from the work injury. *Saville v. Workers' Comp. Appeal Bd. (Pathmark Stores, Inc.)*, 756 A.2d 1214, 1219 (Pa. Cmwlth. 2000). Restrictions placed on a claimant that "are not causally related to the work injury do not preclude the grant of an employer's termination petition." *Id.*

The WCJ has exclusive province over questions of credibility and evidentiary weight, and the WCJ may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). This Court's role is not to reweigh the evidence or review witness credibility. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246, 1251 (Pa. 2001). Whether the record contains evidence to support findings other than those made by the WCJ is irrelevant; the critical inquiry is whether the record supports the findings actually made, and we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced therefrom. *A & J Builders*, 78 A.3d at 1238-39. Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006).

Claimant argues that Dr. Rajjoub's testimony that Claimant had fully recovered from the work injury was equivocal, given that he also testified Claimant should return to work in a light duty capacity because he had been out of work for over two years. Claimant contends that, where the accepted medical evidence shows that an employee has been "deconditioned" from time off work, the employer must establish that no causal connection exists between the employee's condition and the work injury. Claimant's Br. at 14. According to Claimant, although Dr. Rajjoub testified that Claimant did not require any work restrictions due to the work injury, he did not confirm that Claimant's deconditioned state was not causally connected to the work injury. Therefore, Employer failed to prove that Claimant had fully recovered from his work injury.

Claimant cites *Parker v. Workers' Compensation Appeal Board (Dock Terrace Nursing Home)*, 729 A.2d 102 (Pa. Cmwlth. 1999), to support his argument that Judge Harris erred in terminating his benefits. In *Parker*, the claimant was deconditioned due to chiropractic treatment she received for her work injury. As a result, the claimant was unable to return to work. This Court reversed the Board's order affirming the termination of her benefits, as the employer presented no evidence "establishing a lack of causal connection between" the claimant's deconditioned state and her work injury.

We reject Claimant's comparison to *Parker*, as the *Parker* claimant's deconditioned state was caused by treatment that related to her work injury. Here, Claimant's deconditioned state is the result of the lengthy period of time he has been out of work, not his work injury or any treatment related thereto.

Another decision cited by Claimant, *Thompson v. Workers' Compensation Appeal Board (Sacred Heart Medical Center)*, 720 A.2d 1074 (Pa. Cmwlth. 1998),

15

is likewise distinguishable, as the medical expert in *Thompson* did not "plainly or clearly opine that the [c]laimant had" fully recovered from her work injury. *Thompson*, 720 A.2d at 1077. While the employer's medical expert opined that the claimant's return-to-work restrictions were solely based on the length of time she had been out of work, the work restrictions he recommended were necessitated by the claimant's ongoing pain symptoms.

Claimant's situation is more properly likened to the claimant in *Davis v. Workers' Compensation Appeal Board (Mercy Douglas)*, 749 A.2d 1033 (Pa. Cmwlth. 2000), who was similarly advised to return to her pre-injury job with restrictions because she had been out of the workforce for a long period of time. Because the restrictions were not necessitated by the work injury itself, and the employer's medical expert credibly testified that the claimant had fully recovered from the work injury, her employer met the burden of proof required to terminate her benefits.

Instantly, Judge Harris rejected Claimant's testimony regarding his symptoms, and credited Dr. Rajjoub's testimony that Claimant had fully recovered from his work injury, that Claimant no longer required treatment for his work injury, and that any restrictions on Claimant's return to work were unrelated to the work injury.

Based on the evidence presented, we conclude that substantial evidence supports Judge Harris's finding that Claimant had fully recovered from his work injury, which consisted of "a lower back strain superimposed upon [preexisting] degenerative lower back conditions and degenerative disc disease of the lower back[,] as well as "a cervical strain and sprain causing a traumatic disc injury at C5-6 with associated radiculopathy." C.R., Item No. 44, F.F. No. 19. Dr. Rajjoub found

16

no evidence that Claimant still suffered from a traumatic disc injury at C5-6 with associated radiculopathy, based in part on the physical examination he conducted on June 29, 2021. Dr. Rajjoub also noted that Claimant's cervical injections were placed at the C3-4, C4-5, and C7-T1 levels. Claimant had normal range of motion in his lumbar spine, and Dr. Rajjoub found no evidence of lumbar herniation. Claimant's degenerative cervical disc disease and cervical disc bulges were identified in a 2015 cervical MRI and, therefore, those conditions preexisted the work injury.

Regarding Claimant's return to work, Dr. Rajjoub "[did] not see the need for any restriction[s.]" C.R., Item No. 25, Rajjoub Dep. at 31. Dr. Rajjoub did advise Claimant to "start light work [and] progress into [his] regular job, gradually, because [Claimant] had been off for a while." *Id.* When questioned by Employer's counsel, Dr. Rajjoub confirmed that he did not feel that Claimant's work injury limited his ability to perform only light to medium duty. *Id.* During cross-examination, Dr. Rajjoub reiterated his opinion that Claimant had recovered from the described work injury, and, while Claimant still suffered from preexisting arthritis, he had returned to his pre-injury "baseline." *Id.* at 50. Claimant's counsel asked Dr. Rajjoub if Claimant required work restrictions for his cervical and lumbar condition, regardless of its relation to the work injury. Dr. Rajjoub replied that Claimant "had degenerative lumbar and cervical disc disease. The question, does the [work] injury require any? No." *Id.* at 53. Dr. Rajjoub stated that individuals with degenerative lumbar and cervical disc disease do not usually require restriction and that it "depends on the degree" of stenosis. *Id.* at 54. In Claimant's case, Dr. Rajjoub did not feel that Claimant's MRIs documented a significant degree of stenosis. However, because Claimant had been off work for more than two years, Dr. Rajjoub

17

advised him, as he would any patient, to start with light duty and slowly progress to regular duty work. On re-cross, Dr. Rajjoub answered in the negative when asked if Claimant's January 29, 2019 work injury caused Claimant to have "any restrictions on his ability to return to work[.]" *Id.* at 55. Additionally, Dr. Rajjoub noted in his June 29, 2021 IME report that Claimant "is able to return to his previous employment and he may start with that or . . . start him on light to medium duty[.]" C.R., Item No. 43, IME Report, at 6. Dr. Rajjoub "did not place [Claimant] on any restrictions based on the [January 29, 2019] injury." *Id.*

During his deposition testimony, Dr. Rajjoub clearly and consistently stated that any restrictions Claimant required were solely based on the length of time he had been off work, and not due to the work injury from which Dr. Rajjoub opined Claimant had fully recovered. Indeed, Dr. Rajjoub stated that individuals with degenerative arthritis "usually" do not require work restrictions, and Claimant did not have a significant degree of stenosis that could warrant work restrictions. In essence, neither the January 29, 2019 work injury nor Claimant's preexisting degenerative arthritis necessitated work restrictions. Claimant simply was not physically conditioned to immediately return to full-duty work after being out of work for more than two years. Thus, Dr. Rajjoub suggested that Claimant initially work light duty and progress towards fully-duty work.

Judge Harris granted Employer's termination petition based on the credible testimony of Dr. Rajjoub, which Judge Harris favored over that provided by Dr. Paz. Judge Harris explicitly rejected Claimant's testimony regarding his ongoing

18

symptoms. This Court will not reweigh the evidence or overturn Judge Harris's credibility determinations. Accordingly, we affirm the Board.

_____
ELLEN CEISLER, Judge

Judges Fizzano Cannon and Dumas did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James F. Buckley, : 
               Petitioner : 
                : 
      v. :  No. 1456 C.D. 2022
                : 
Suburban Propane Partners, LP : 
(Workers' Compensation Appeal : 
Board), : 
               Respondent : 

# **O R D E R**

AND NOW, this 1st day of November, 2023, the November 30, 2022 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

                            _____

                            ELLEN CEISLER, Judge